UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

OCT 28 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



|  |  |
|---|---|
| WALEED KHALID ABU AL-WALEED AL HOOD AL-QARQANI; AHMED KHALID ABU AL-WALEED AL HOOD AL-QARQANI; SHAHA KHALID ABU AL-WALEED AL HOOD AL-QARQANI; NAOUM AL-DOHA KHALID ABU AL-WALEED AL HOOD AL-QARQANI; NISREEN MUSTAFA JAWAD ZIKRI,<br><br>        Petitioners-Appellants,<br><br>v.<br><br>CHEVRON CORPORATION; CHEVRON USA INC.,<br><br>        Respondents-Appellees. | No.   19-17074<br><br>DC No. 4:18-cv-03297-JSW ND Cal., Oakland<br><br>REPORT AND RECOMMENDATION OF THE SPECIAL MASTER |

In re:  EDWARD C. CHUNG.

Before:      TASHIMA, Circuit Judge, acting as Special Master:

In the underlying appeal, the panel[1] affirmed the judgment in favor of

Respondents-Appellees, agreeing with the district court that the parties did not

---

[1]      Circuit Judges Sidney R. Thomas, Paul J. Kelly, Jr., (United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation), and Eric D. Miller.

enter into a binding agreement to arbitrate. *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1021 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2835 (2022), *reh'g denied*, No. 21-1153, 2022 WL 3580317 (U.S. Aug. 22, 2022). Following oral argument and submission of the matter for decision by the panel, Edward C. Chung, counsel for Petitioners-Appellants, filed a Motion to Attach a Supplemental Exhibit to Appellants' Pending Response and Motion to Strike. [Dkt. 66] Chung submitted an exhibit that he described as "a *Saudi Sun* article that explains and provides an informative summary of factual and procedural events" related to the arbitration proceedings at issue in the appeal. [Dkt. *id.* at 1]

The panel thereafter issued an Order to Show Cause (OSC), stating that the article "purports to originate from a publication called *The Saudi Sun*," but it "appears to have been fabricated for purposes of this litigation." [Dkt. 74] The panel ordered Chung to show cause why sanctions should not be imposed for fraud upon the court. [Dkt. *id.*]

In his response to the OSC, Chung did not address the issue raised by the panel – whether the article was fabricated for purposes of the litigation. Instead, Chung asked the panel to vacate the OSC based on unrelated allegations of misconduct by Appellees' counsel and on the specious argument that the exhibit was not offered as evidence but merely as a demonstrative exhibit. [Dkt. 79]

After reviewing Chung's response, the panel issued an order appointing the Special Master. [Dkt. 80] The order authorized the Special Master "to conduct any proceedings he deems appropriate to determine the legitimacy of the article attached at Docket Entry No. 66, and prepare a written report and recommendation to this panel regarding what, if any, sanctions should be imposed on Mr. Chung for submitting the article to this court." [Dkt. 80] The panel denied Appellants' petition for rehearing and rehearing en banc, and the mandate issued. [Dkt. 81, 82]

The Special Master herewith submits his report and recommendation.

## I.   BACKGROUND

### A.    Underlying Appeal and Filing of the Article

In the underlying appeal, Appellants claimed that Chevron owed them "billions of dollars in rent" based on an arbitration clause contained in a 1933 agreement between Saudi Arabia and Chevron's predecessor, Standard Oil Company of California. *Al-Qarqani*, 8 F.4th at 1021. In 2014, Appellants initiated arbitration proceedings against Chevron in Cairo, but Chevron stopped participating, "citing a series of irregularities in the composition of the arbitral panel." *Id.* at 1022. "[T]he irregularities persisted," and "after the initial arbitral panel dismissed the dispute," a new panel issued an award ordering Chevron to pay $18 billion. *Id.* The district court dismissed Appellants' petition to confirm the

award for lack of jurisdiction on the ground that there was no agreement to arbitrate between the parties. The district court also noted "that numerous procedural infirmities would independently preclude confirmation of the arbitral award." *Id.*

On appeal, Chevron filed a motion for judicial notice, asking the panel to take judicial notice of a certified translation of an Egyptian judgment, showing that Egyptian prosecutors had prosecuted several people involved in the arbitration at issue for fraudulent conduct during the arbitration. Decl. of Nader Hesham Mostafa. [Dkt. 45] In response, Chung moved to strike Chevron's motion for judicial notice. [Dkt. 46]

The appeal was argued and submitted in October 2020, and the opinion was filed in August 2021. The panel affirmed the judgment, stating that the "proper disposition" was "a denial of the enforcement petition on the merits" because there was no arbitration agreement between the parties. *Al-Qarqani*, 8 F.4th at 1025, 1027. In light of its conclusion that there was no enforceable agreement, the panel stated that it "need not consider the alternative grounds identified by the district

court for denying enforcement, including the serious irregularities in the arbitral proceedings."[2] *Id.* at 1025.

After oral argument, but before the panel's opinion was filed, Chung filed the motion at issue here. He requested leave "to attach, for ***demonstrative purposes***, a *Saudi Sun* article that explains and provides an informative summary of factual and procedural events related to the 2014 and 2015 arbitration proceedings that took place in Cairo, Egypt and the U.S. confirmation and [e]nforcement proceedings in the United States." [Dkt. 66 at 1] He asserted that Chevron's motion for judicial notice of the Egyptian criminal judgment was an attempt to ask the court "to consider alternative legal grounds to *deny* confirmation and enforcement of Appellants' June 3, 2015 arbitral award" by relying on "overseas prosecutions that the record irrefutably reveals that oil cartels Chevron and Saudi Aramco concocted through foreign corrupt practices." [Dkt. *id.*] To support this assertion, Chung asked the court to consider the *Saudi Sun* article because, according to him, it:

> provides a ***summary of the record*** contained in the lower court docket
> and further assist [sic] this Court in understanding how oil cartels
> Chevron and Saudi Aramco used political influence that rightfully

---

[2]    Because the panel did not reach the irregularities in the arbitral proceedings, it did not consider Chevron's motion for judicial notice of the Egyptian criminal judgment, denying all pending motions as moot. *Id.* at 1027.

invoked an arbitration clause which authorized arbitration for "***any dispute arising***" out of the 1933 Concession Agreement and "***any consequences thereof***."

[Dkt. *id.* at 2]  Chung further asserted that the *Saudi Sun* exhibit

> summarizes and will aide [sic] the panel in considering Appellants' pending Motion to Strike Respondent's Judicial Notice that relied upon falsified evidence and foreign corrupt practices. . . . The attached supplemental exhibits aids this Court in understanding why Chevron alternative legal grounds to ***deny*** confirmation of a foreign arbitral award is not competent.

Dkt. *id* at 4]

As stated above, the panel issued its OSC ordering Chung to show cause why he should not be sanctioned for fraud upon the court and appointed the Special Master.  [Dkt. 74, 80]

## B.  Special Master Proceedings

On December 14, 2021, the Special Master filed an order setting a pre-hearing conference for March 11, 2022.  [Dkt. 83]  The order directed counsel to "be prepared to discuss the scope and length of the evidentiary portion of the hearing, *i.e.*, whether counsel contemplate calling any witnesses, including expert witnesses, and/or adducing or offering any documentary evidence."  [Dkt. *id.*]  It further cautioned counsel to "bear in mind that the primary factual issue referred to the Special Master is 'to determine the legitimacy of the article attached at Docket Entry No. 66.'"  [Dkt. *id*.]

At the March 2022 hearing, the Special Master set a briefing schedule and, after lengthy consultation with counsel, ordered the next hearing to be held on August 26, 2022, the first conflict-free trial date available to all counsel. [Dkt. 88] After that hearing, Chung filed a motion to stay appellate proceedings, challenging the "legitimacy" of these proceedings and asserting that the court order "involv[ed] judicial misconduct."[3] [Dkt. 89 at 1]

In Chung's opening brief in the Special Master proceeding, he made spurious allegations of misconduct by opposing counsel in the underlying appeal and by this court in ordering him to show cause why sanctions should not be imposed. [Dkt. 107] The one issue he failed to address was the legitimacy of the *Saudi Sun* article.

Chung filed a motion for clarification of the Special Master proceedings in which he, among other claims, asserted that sanctions were time-barred and that the court had no authority to impose sanctions. [Dkt. 93] He subsequently filed a motion to strike Appellees' response to this motion. [Dkt. 98]

After various other filings, on July 20, 2022, Chung filed a motion for disqualification of the Special Master, alleging judicial misconduct by the Special

---

[3]     This motion, of course, was directed to the panel.

Master and Judge Miller.  [Dkt. 109]  The Special Master denied the motion and filed an order explaining logistical issues for the August 26, 2022, hearing.  [Dkt. 117, 119]

At 9:29 p.m., on the night before the August 26, 2022, hearing, Chung filed, via CM/ECF, a letter in which he declared his refusal to participate in the hearing.  [Dkt. 121]  Because Chung's letter made it clear that he intended to not attend the hearing and his failure to appear at the hearing, the Special Master conducted the hearing without Chung, treating the proceeding as a default matter, and allowed argument by Appellees' counsel, who had arrived from out-of-town, and were present for the hearing.  [Dkt. 122]

## II.    FINDINGS OF FACT[4]

There are two questions germane to determining whether Chung has engaged in sanctionable conduct.  First, was the *Saudi Sun* exhibit the publication of a disinterested third-party news organization, or was it a fabricated "publication," prepared by or at the direction of Chung?  Second, did Chung file the exhibit with the intent to mislead the court into believing that the exhibit was

---

[4]    Because, as noted above, Chung refused to appear for or participate in the hearing, he presented no evidence addressing the issue that was the subject of the OSC:  whether sanctions should be imposed because the *Saudi Sun* exhibit was fabricated for purposes of this litigation.  [Dkt. 74]

the work of an objective third party in order to bolster his position?  As explained below, I find that the exhibit was fabricated by Chung and that he filed it with the intent to mislead the court.

A.     The following findings of fact support the ultimate finding that the exhibit was prepared by or at the direction of Chung:

1.     There appears to be no such news publication as *The Saudi Sun*. Chung presented no evidence that it is a publication of a third-party news organization or how and where he obtained it.  The only evidence addressing this question is the declaration of Appellees' Research Analyst, who stated that he searched the two principal databases that catalogue newspapers and news publications from around the world (OCLC's First Search and the United States Library of Congress) and did not find a publication called *The Saudi Sun*.  Decl. of Spencer E. Scott.  [Dkt. 111]  He additionally searched Google and Bloomberg Law and found no reference to *The Saudi Sun* except, in media coverage of Chung's court filings.  [Dkt. *id*.]

2.     The content of the *Saudi Sun* exhibit is extremely similar, virtually identical, to Chung's filings in this court and the United States District

Court for the Southern District of Texas[5]. At least five lengthy passages in the *Saudi Sun* exhibit are taken almost verbatim from Chung's court filings. *See* [Dkt. No. 110 (Ex. 1) (chart comparing *Saudi Sun* articles with Chung's court filings)] *For example:*

- *Compare* **Dkt. 66** (*Saudi Sun* article at pages 1, 5, stating, "The letter from the Saudi Ambassador instructed Prosecutor Barakat, '***to take note and issue your instructions to take legal measures against this arbitration center and those working within it.***' . . . That same day on Saturday, Egyptian Regional Prosecutor, Mohammed Shehata, formally opened a criminal investigation against the arbitration judges, the arbitration center's officers and staff, as well as against the Saudi landowners of Ras Tanura. In this prosecutor's report he states that the Egyptian General Prosecutor's Office '***ordered us***' to '***take all necessary action against the arbitration center and those that work within it.***'") *with* **Dkt. 46 at 5–6** (Appellants' response and motion to strike Chevron's motion for judicial notice of Egyptian judgment, stating, "The letter from the Saudi Ambassador

---

5   Certain "parallel litigation," in which Chung also represented these same petitioners, took place in the Southern District of Texas. *See Al-Qarqani*, 8 F.4th at 1025.

instructed Prosecutor Barakat, '***to take note and issue your instructions to take legal measures against this arbitration center and those working within it.***' That same day on Saturday, Egyptian Regional Prosecutor, Mohammed Shehata, formally opened a criminal investigation against the arbitration judges, the arbitration center's officers and staff, as well as against the Saudi landowners of Ras Tanura. In this prosecutor's report he states that the Egyptian General Prosecutor's Office '**ordered us**' to '***take all necessary action against the arbitration center and those that work within it.***'");

● *Compare* **Dkt. 66** (*Saudi Sun* article at pages 7–8, stating, "Does this sound odd? Well it should as this is essentially equivalent to indicting Judge Judy for offering a legal opinion on television. It is even more concerning considering the [sic] that the arbitral decision against Chevron and Aramco applied the same contractual principles of liability that the deceased U.S. Supreme Court Justice Antoine [sic] Scalia ruled in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) and Justice Clarence Thomas just reaffirmed on June 1, 2020 in *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA LLC*. As Chung, Malhas & Mantel, PLLC pointed out, had our U.S. Supreme Court issued their decisions in Egypt or

Saudi Arabia, they would likely be criminally indicted for finding jurisdiction.") *with* **Dkt. 46 at 9** (Appellants' response and motion to strike Chevron's motion for judicial notice of Egyptian judgment, stating, "Does this sound odd?  Well it should as this is essentially equivalent to indicting Judge Judy for offering a legal opinion on television.  It is even more concerning considering the [sic] that the arbitral decision against Chevron and Aramco applied the same contractual principles of liability that U.S. Supreme Court Justice Antoine [sic] Scalia ruled in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) and Justice Clarence Thomas just reaffirmed on June 1, 2020 in *GE Energy Power* decision.  Had our U.S. Supreme Court issued their decisions in Egypt or Saudi Arabia, they would likely be criminally indicted for finding jurisdiction and imprisoned.");

● *Compare* **Dkt. No. 66** (*Saudi Sun* article at page 7, stating, "Dr. Dima N. Malhas, a U.S. attorney and partner of Chung, Malhas & Mantel with law degrees in international law, civil law and Sharia jurisprudence and who is fluent in Arabic, realized that the purported criminal investigative report filed by Chevron's legal counsel was not even written in Arabic, although it sporadically contained Arabic words.  She then forwarded this purported criminal investigative report to four Arabic linguists and as she suspected, it

was not Arabic as Chevron represented to the lower court and it was nothing more than a falsified criminal report that although perfectly translated into English, the report itself was nothing more than jibber-jabber and amounted to falsified evidence.") *with* **Dkt. 53 at 4–5** (Appellants' reply to Chevron's response to Appellants' motion to strike Chevron's motion for judicial notice of Egyptian judgment, stating, "Dr. Dima N. Malhas, counsel of record for the Appellants with law degrees in international law, civil law and Sharia jurisprudence and who is fluent in Arabic, realized that the purported criminal investigative report filed by Chevron's legal counsel was not even written in Arabic, it was not on the Egyptian Public Prosecutor's letterhead and was dated August 8, 2018 despite Chevron prior to that date representing there was an ongoing investigation and later used this evidence to support its false narrative of an alleged ongoing criminal investigation. Dr. Malhas then forwarded this fabricated investigative report to a court certified translator and four Arabic linguists and as she suspected, it was not Arabic as Chevron represented to the lower court.  In fact, it was nothing more than a falsified criminal report that although perfectly translated into English, the report itself was nothing more than jibber-jabber.").

The purported news publication also contains images used by Chung in his court filings.  *See* Dkt. 110 (Ex. 1 at 5–13**)** (comparing images)**.**

The distinctive language used in both the *Saudi Sun* exhibit and Chung's court filings ("Does this sound odd," "Judge Judy," "jibber-jabber"), the common errors ("the that the," "Antoine" Scalia), and the common emphases (bold, italics, underline of the same passages) also support the finding that the exhibit was not the work of an independent third-party news organization, but instead was prepared by or at the direction of Chung.

**B.**     The following findings of fact support the ultimate finding that Chung filed the *Saudi Sun* exhibit with the intent to deceive the court into believing that the exhibit was the publication of an objective third-party news organization, thereby bolstering Appellants' claim:

**1.**     The exhibit was formatted to create the appearance that it was a legitimate news article by an unbiased news organization.  The exhibit contains a masthead in large font, **The Saudi Sun**, and presents the information in a newspaper-like format, in columns, with headlines atop different purported articles, and the phrase, "Continued on page ____" at the bottom of each purported article on page 1.  [Dkt. 66]  The exhibit also contains photographs with captions, similar in style to those used in a newspaper.  [Dkt. *id*.]

19-17074

    **2.**    Chung intended to create the impression that the exhibit was a legitimate news publication by calling it "a *Saudi Sun* article that explains and provides an informative summary of factual and procedural events" related to the arbitration proceedings.  [Dkt. *id*.]

    **3.**    The purported articles in the *Saudi Sun* exhibit refer to Chung and his law firm in the third person in order to convey the impression that they were not written by or at the direction of Chung.  *See*, *e.g.*, [Dkt. *id.* (*Saudi Sun* exhibit at 15] stating, "in June of 2018 the Seattle based law firm, Chung, Malhas & mantel [sic], PLLC filed a petition to enforce the June 3, 2015 arbitral award").  In fact, where the language in the *Saudi Sun* exhibit is taken verbatim from Chung's court filings, the exhibit expressly makes changes when referring to Chung's law firm so that it appears as if the article is written by an objective third party.  For example, in Appellants' reply to Chevron's response to Appellants' motion to strike Chevron's motion for judicial notice, Dr. Dima N. Malhas is described as "counsel of record for the Appellants."  [Dkt. 53 at 4]  When the exact same paragraph is repeated in the *Saudi Sun* exhibit, Malhas is described as "a U.S. attorney and partner of Chung, Malhas & Mantel."  [Dkt. 66 (*Saudi Sun* exhibit at 7)]  Similarly, Chung asserted in Appellants' response to and motion to strike Chevron's motion for judicial notice that, "Had our U.S. Supreme Court issued

their decisions in Egypt or Saudi Arabia, they would likely be criminally indicted for finding jurisdiction and imprisoned." [Dkt. 46 at 9] The same paragraph in the *Saudi Sun* stated, "As Chung, Malhas & Mantel, PLLC pointed out, had our U.S. Supreme Court issued their decisions in Egypt or Saudi Arabia, they would likely be criminally indicted for finding jurisdiction." [Dkt. 66 (*Saudi Sun* exhibit at 8)] The changes in language indicate an intentional decision to make the *Saudi Sun* exhibit appear as if it were written by an objective third party, not by Chung or his law firm.

       **4.** By filing the *Saudi Sun* exhibit via CM/ECF, the court's electronic filing system, Chung filed the exhibit as counsel for appellants, signalling his intent that the court rely on the exhibit in deciding Appellants' underlying claim. [Dkt. 66] Chung explicitly stated in his motion that the exhibit "explain[ed] and provide[d] an informative summary of factual and procedural events related to the 2014 and 2015 arbitration proceedings" at issue in the appeal, and that the exhibit would "aid[]" the court in understanding why it should reject Chevron's position. [Dkt. 66 at 2, 4] Chung clearly intended to create the impression that the exhibit constituted objective third-party evidence supporting Appellants' position, rather than what it actually was – additional argument created by Chung in support of Appellants' position.

## III.   CONCLUSIONS OF LAW

This court has the inherent power to impose sanctions for conduct that constitutes fraud upon the court.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244–50 (1944); *see also*, *e.g.*, *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (stating that courts have inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process" (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 137 S. Ct. 1178, 1186 (2017))); *Hongsermeier v. Comm'r*, 621 F.3d 890, 896 (9th Cir. 2010) ("We have the inherent power to . . . fashion an appropriate remedy and sanction a party or its lawyers for willful abuse of the judicial process, particularly when the party or its lawyers have intentionally practiced a fraud upon the court.").  "The inherent powers of federal courts are those that 'are necessary to the exercise of all others.'" *Levander v. Prober (In re Levander)*, 180 F.3d 1114, 1118 (9th Cir. 1999) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)).  This inherent power "springs forth from courts' traditional power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Chambers*, 501 U.S. at 43).

19-17074

Fraud upon the court is "that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.* at 1119 (quoting *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 916 (9th Cir. 1991)). "Fraud on the court occurs when the misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced." *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003).

The record clearly establishes that Chung "intentionally practiced a fraud upon the court." *Hongsermeier*, 621 F.3d at 896. Chung's actions are similar to those in *Hazel-Atlas Glass*, where Hartford-Empire's attorneys prepared and "determined to have published in a trade journal an article signed by an ostensibly disinterested expert," which the attorneys then introduced as part of the record in support of Hartford-Empire's pending patent application. *Hazel-Atlas Glass*, 322 U.S. at 240. After its application was granted, Hartford-Empire sued Hazel-Atlas Glass for patent infringement. The district court dismissed the case, but on appeal, Hartford-Empire's attorneys, "one of whom had played a part in getting the spurious article prepared for publication, directed the Court's attention" to the article and won on appeal. *Id.* at 241. Hartford-Empire convinced the purported

disinterested author of the article to swear to Hazel-Atlas Glass that he wrote the
article. Hazel-Atlas Glass "capitulated," but when it learned of the circumstances
related to the article, it brought suit to set aside the judgment on the ground that the
judgment had been obtained by fraud. *Id.* at 243. The Supreme Court concluded
that "[e]very element of the fraud here disclosed demands the exercise of the
historic power of equity to set aside fraudulently begotten judgments," describing
the situation as "a deliberately planned and carefully executed scheme to defraud
not only the Patent Office but the Circuit Court of Appeals." *Id.* at 245–46. The
Court explained that:

> tampering with the administration of justice in the manner
> indisputably shown here involves far more than an injury to a single
> litigant. It is a wrong against the institutions set up to protect and
> safeguard the public, institutions in which fraud cannot complacently
> be tolerated consistently with the good order of society.

*Id.* at 246. The Court therefore ordered that the judgment in favor of Hartford-
Empire be set aside. *Id.* at 251.

Similar to the attorneys in *Hazel-Atlas Glass*, Chung, or someone at his
direction, prepared not only one article, but an entire fraudulent news publication
with several articles. Chung then, by filing it via CM/ECF, asked this court to rely
on the fraudulent publication to support his clients' claim. Chung therefore

perpetrated a fraud upon the court that was "plainly designed to corrupt the legitimacy of the truth-seeking process." *Dixon*, 316 F.3d at 1046.

Instead of addressing the sole matter at issue in these proceedings, Chung repeatedly has leveled irrelevant, outrageous, baseless charges of misconduct against the judges of this court and opposing counsel. In his numerous filings, he has refused to address the issue raised in the OSC: should he be sanctioned for filing the *Saudi Sun* exhibit, which was presented to the court in a form designed to appear as the unbiased journalism of a legitimate, independent news organization, when it actually was prepared by him or at his direction?

Chung attempts to elide the issue by describing the *Saudi Sun* article as a "demonstrative exhibit." However, this label does not excuse the fact that, when Chung filed the article, he called it "a *Saudi Sun* article that explains and provides an informative summary of factual and procedural events related to the 2014 and 2015 arbitration proceedings." [Dkt. 66] Chung clearly intended to give the court the impression that the article was an objective article written by an independent news organization that supported his position. As the Supreme Court stated, "[t]ruth needs no disguise. The article, even if true, should have stood or fallen under the only title it could honestly have been given—that of a brief in behalf of

[Appellants], prepared by [Appellants'] agents, attorneys, and collaborators."
*Hazel-Atlas Glass*, 322 U.S. at 247.

Describing the article as a "demonstrative exhibit" does not mean that
Chung can avoid the strictures of the rules of evidence, including the requirement
of Federal Rule of Evidence 901 that "[t]o satisfy the requirement of
authenticating or identifying an item of evidence, the proponent must produce
evidence sufficient to support a finding that the item is what the proponent claims
it is." *See* 22 Charles Alan Wright et al., Federal Practice and Procedure § 5172.7
(2d ed. 2022) (stating that "the usual procedural rules still apply" to demonstrative
evidence and that "calling the evidence 'demonstrative' should not allow the
proponent to sidestep other rules of evidence," including "authentication," which
"simply requires the proponent to offer sufficient evidence so that a reasonable
trier of fact could find that the object is what the proponent says it is"). The *Saudi
Sun* exhibit clearly is not what Chung says it is.

Nor does this label excuse Chung from following the Washington Rules of
Professional Conduct. Rule 3.3, requiring candor toward the tribunal, provides that
"[a] lawyer shall not knowingly . . . make a false statement of fact . . . to a tribunal
or fail to correct a false statement of material fact . . . previously made to the
tribunal by the lawyer." Wash. R. Pro. Conduct 3.3(a)(1). Rule 8.4 provides that it

is "professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." *Id.* 8.4(c).

Chung violated both rules. The exhibit was not "a *Saudi Sun* article," as he repeatedly asserted, because there is no such thing. [Dkt. 66**]** The *Saudi Sun* does not exist; Chung or someone at his direction made it up, prepared the masthead, and formatted the "articles" in columns like a newspaper or news magazine, with "continued on page __" at the bottom of each "article."

"When we conclude that the integrity of the judicial process has been harmed, . . . and the fraud rises to the level of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decisions,' we not only can act, we should." *Dixon*, 316 F.3d at 1046 (quoting *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960)). "[M]isrepresentation cannot be taken lightly." *Franco v. Dow Chem. Co. (In re Girardi)*, 611 F.3d 1027, 1037 (9th Cir. 2010).

> The vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court. The burden of ascertaining the true state of the record would be intolerable if misrepresentation was common. The court relies on the lawyers before it to state clearly, candidly, and accurately the record as it in fact exists.

*Id.* (quoting *Sigmond v. Brown (In re Boucher)*, 837 F.2d 869, 871 (9th Cir.), *modified*, 850 F.2d 597 (9th Cir. 1988)). "Enormous amounts of time and judicial resources have been wasted" by Chung's conduct. *Dixon*, 316 F.3d at 1047.

Chung "was responsible for 'an intentional, material misrepresentation directly aimed at the court.'"[6] *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1134 (9th Cir. 2022) (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1097 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009)), *petition for cert. filed*, No. 22-172 (U.S. Aug. 24, 2022). "As the Supreme Court has explained, a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rousseau*, 985 F.3d at 1090. Chung's "entire course of conduct" in preparing and filing the *Saudi Sun* exhibit "evidenced bad faith and an attempt to perpetrate a fraud on the court." *Chambers*, 501 U.S. at 51.

Pursuant to the foregoing Findings of Fact and Conclusions of Law, I conclude that sanctions are therefore appropriate.

---

[6]   Chung's "misrepresentations were material in that they were directed to . . . the heart of the appeal" – the legitimacy of the arbitration proceedings resulting in the arbitral award that Appellants sought to enforce. *Boucher*, 837 F.2d at 871.

## IV.  RECOMMENDATIONS

I recommend to the panel that it find that *The Saudi Sun* exhibit was prepared by Chung or at his direction, that it is false and misleading, and that he filed it via CM/ECF with the intent that it be relied on by the panel.  Pursuant to those findings, I recommend that Chung be sanctioned by being required to reimburse Appellees for the attorneys' fees and costs (or such portion thereof as the panel deems just and proper) incurred by Appellees in addressing Chung's filing of the *Saudi Sun* exhibit in Docket No. 66 and its aftermath.  *See Chambers*, 501 U.S. at 46 (stating that, "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party" (quoting *Universal Oil Prods. Co. v. Root Refin. Co.*, 328 U.S. 575, 580 (1946))).  These are expenses that would not have been incurred, but for Chung's deceitful, obstructive, and contumacious conduct.  *See Goodyear*, 137 S. Ct. at 1183–84 (holding that an order under the court's "inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees . . . is limited to the fees the innocent party incurred solely because of the misconduct").

I further recommend that the panel refer this matter to the Washington State Bar for possible disciplinary proceedings for violations of the Washington Rules of Professional Conduct and/or refer this matter to the Appellate Commissioner

2

pursuant to Ninth Circuit Rule 46-2(f) for the conduct of disciplinary proceedings.[7]

Finally, Appellees shall file, within 30 days of this Report, their statement of the attorneys' fees and costs incurred in this Special Master proceeding.

---

[7] This report does not address Chung's willful failure to appear at the August 26, 2022, hearing.  *See* p. 7, *supra*; *see also Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987) ("It is well established that '[a]n attorney who believes a court order is erroneous is not relieved of the duty to obey it.'" (quoting *Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979))).  The panel may wish to include Chung's failure to appear at the August 26 hearing as part of its referral to the Appellate Commissioner for disciplinary proceedings.