UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| WALEED KHALID ABU AL-WALEED AL HOOD AL-QARQANI; AHMED KHALID ABU AL-WALEED AL HOOD AL-QARQANI; SHAHA KHALID ABU AL-WALEED AL HOOD AL-QARQANI; NAOUM AL-DOHA KHALID ABU AL-WALEED AL HOOD AL-QARQANI; NISREEN MUSTAFA JAWAD ZIKRI, | No. 19-17074 <br><br> SPECIAL MASTER PROCEEDING <br><br> DC No. 4:18-cv-03297-JSW N.D. Cal., Oakland |
| Petitioners-Appellants, | **RESPONDENTS-APPELLEES' RESPONSE TO MR. CHUNG'S NOVEMBER 18, 2022 FILING** |
| v. | |
| CHEVRON CORPORATION; CHEVRON USA INC., | |
| Respondents-Appellees. | |
| In re: EDWARD C. CHUNG. | |

CHARLES J. STEVENS
STEPHEN HENRICK
GIBSON, DUNN & CRUTCHER LLP
555 MISSION STREET, SUITE 3000
SAN FRANCISCO, CA 94105-0921
TELEPHONE: 415.393.8200
FACSIMILE: 415.393.8306

THOMAS G. HUNGAR
GIBSON, DUNN & CRUTCHER LLP
1050 CONNECTICUT AVENUE, N.W.
WASHINGTON, DC 20036-5306
TELEPHONE: 202.955.8500
FACSIMILE: 202.467.0539

CHRISTIAN LEATHLEY
SCOTT BALBER
HERBERT SMITH FREEHILLS NEW YORK LLP
450 LEXINGTON AVENUE, 14TH FLOOR
NEW YORK, NY 10017
TELEPHONE: 917.542.7600
FACSIMILE: 917.542.7601

ANNE CHAMPION
AKIVA SHAPIRO
GIBSON, DUNN & CRUTCHER LLP
200 PARK AVENUE
NEW YORK, NY 10166
TELEPHONE: 212.351.4000
FACSIMILE: 212.351.5219

*Attorneys for Chevron Corporation and Chevron U.S.A. Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................. 1

FACTUAL BACKGROUND ................................................................. 2

ARGUMENT ........................................................................................ 10

I.   The Arguments In the Introduction Section of Mr. Chung's Filing
     Lack Merit ................................................................................... 10

     A.   Mr. Chung's Purported "RPC 8.3 Report on Judicial
          Misconduct" Is Improper And Meritless ............................. 10

     B.   The Ninth Circuit's Issuance of the Mandate Does Not Preclude
          Sanctions ............................................................................. 11

     C.   Mr. Chung's Allegations Concerning Special Master Tashima
          and the Recordings of the March 11, 2022 Pre-Hearing
          Conference Do Not Demonstrate Bias or Partiality ........... 12

     D.   Federal Rule of Appellate Procedure 27 Does Not Authorize
          Mr. Chung's Behavior .......................................................... 14

     E.   Ninth Circuit Local Rule 39-1.6(a) Does Not Preclude an
          Award of Respondents' Attorneys' Fees as Compensatory
          Sanctions ............................................................................. 16

II.  Respondents' Response to Mr. Chung's First Objection ............. 17

     A.   Mr. Chung's Allegations Concerning Special Master Tashima's
          Actions in Other Cases Are Baseless and Irrelevant .......... 17

     B.   Mr. Chung's Allegations Concerning Gibson Dunn's Hiring of
          Former Law Clerks Are Irrelevant ...................................... 19

III. Respondents' Response to Mr. Chung's Second Objection: Mr.
     Chung's Accusations of Misconduct Are Unfounded and Irrelevant .......... 20

IV.  Respondents' Response to Mr. Chung's Third Objection ............. 21

     A.   Federal Rule of Appellate Procedure 38 Does Not Provide the
          Exclusive Basis For Imposing Sanctions in Federal Appellate
          Courts .................................................................................. 21

     B.   Federal Rule of Appellate Procedure 47 Does Not Preclude
          Sanctions ............................................................................. 22

i

C.  The Imposition of Inherent Authority Sanctions Would Not Violate Mr. Chung's Due Process Rights .............................................23

V.  Respondents' Response to Mr. Chung's Fourth Objection:  The Special Master Did Not Recommend Disciplinary Sanctions, Only a Referral for Further Disciplinary Proceedings ................................................24

VI.  Respondents' Response to Mr. Chung's Fifth Objection..............................25

A.  *Hazel-Atlass Glass Co.* Applies to Attempted Fraud on the Court Even If the Fraud Does Not Succeed .........................................25

B.  The Special Master Applied the Correct Legal Standard and Found that Mr. Chung Engaged in Bad Faith ......................................25

C.  There Is No Basis for Mr. Chung to Object to Respondents' Role in the Sanctions Proceedings .......................................................27

D.  The Court May Award Respondents the Entirety of the Attorneys' Fees They Incurred in Participating in These Sanctions Proceedings...........................................................................28

VII.  Respondents' Response to Mr. Chung's Sixth Objection ............................30

A.  Mr. Chung Received Due Process in the Special Master Proceeding. .......................................................................................30

B.  Mr. Chung's Vagueness Argument Fails ...........................................31

CONCLUSION ......................................................................................................33

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Qarqani v. Chevron Corp.*,
  No. 21-1153 (U.S.) .......................................................................6, 13

*In re Bavelis*,
  743 F. App'x 670 (6th Cir. 2018) ........................................................29

*Botell v. United States*,
  No. CIV S-11-1545 GEB GGH, 2012 WL 4208173
  (E.D. Cal. Sept. 19, 2012).................................................................26

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)...........................................................4, 17, 22, 32

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) ................................................................18

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990).....................................................................11, 21

*Correa v. Nampa Sch. Dist. No. 131*,
  645 F.2d 814 (9th Cir. 1981) .............................................................31

*Divane v. Krull Elec. Co.*,
  200 F.3d 1020 (7th Cir. 1999) ............................................................29

*First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*,
  210 F.3d 983 (9th Cir. 2000) ........................................................19, 20

*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) .....................................................19, 24, 25

*Haeger v. Goodyear Tire & Rubber Co.*,
  813 F.3d 1233 (9th Cir. 2016),
  *rev'd on other grounds*, 581 U.S. 101 (2017) ............................................26, 28

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944).....................................................................25, 33

*Lasar v. Ford Motor Co.*,
  399 F.3d 1101 (9th Cir. 2005) ............................................................23

*Liteky v. United States*,
  510 U.S. 540 (1994)........................................................................14

*In re Livdahl*,
No. 2:16-bk-12768-MCW, 2019 WL 1615282
(B.A.P. 9th Cir. Apr. 15, 2019) ...................................................31, 32

*Lowry v. Barnhart*,
329 F.3d 1019 (9th Cir. 2003) ...........................................................15

*Sgaraglino v. State Farm Fire & Cas. Co.*,
896 F.2d 420 (9th Cir. 1990) .............................................................12

*United States v.*
*Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*,
545 F.3d 1134 (9th Cir. 2008) ...........................................................11

*WB Music Corp. v. Royce Int'l Broad. Corp.*,
No. 21-55264 (9th Cir.) ...............................................................18, 19

**Rules**

Fed. R. App. P. 10 .................................................................................15

Fed. R. App. P. 27 ...............................................................14, 15, 16, 17

Fed. R. App. P. 38 ...........................................................................21, 22

Fed. R. App. P. 46 .............................................................................4, 32

Fed. R. App. P. 47 ...........................................................................22, 23

Fed. R. Civ. P. 1 .....................................................................................9

Fed. R. Civ. P. 11 ............................................................................21, 22

Fed. R. Civ. P. 53 ...................................................................................9

Fed. R. Evid. 201 ..................................................................................16

Ninth Cir. Gen. Order 12.9 ..........................................................4, 23, 32

Ninth Cir. R. 27-1 .................................................................................15

Ninth Cir. R. 46-2 .............................................................................4, 24

Ninth Cir. R. 39-1.6 ...................................................................16, 17, 20

Wash. R. Prof'l Conduct, Preamble........................................................28

Wash. R. Prof'l Conduct 3.3 .............................................................4, 32

Wash. R. Prof'l Conduct 8.3 .............................................................1, 10

Wash. R. Prof'l Conduct 8.4 ...........................................................27, 28

Respondents-Appellees Chevron Corporation and Chevron U.S.A. Inc. ("Respondents") respectfully submit this response to the filing by Edward Chung of Chung, Malhas & Mantel, PLLC, on November 18, 2022, which he captioned "RPC 8.3 Report on Judicial Misconduct and Attorney Edward C. Chung's Noted Objections to A. Wallace Tashima's October 28, 2022 Special Master Report" (Dkt. 125) (the "Objections").

## INTRODUCTION

Mr. Chung's Objections do not address or object to any of the factual findings set forth in the Special Master's report. Dkt. 124. The uncontested factual record in this sanctions proceeding therefore establishes "that *The Saudi Sun* exhibit was prepared by Chung or at his direction, that it is false and misleading, and that he filed it via CM/ECF with the intent that it be relied on by the panel." Dkt. 124 at 24. It also conclusively demonstrates that the *Saudi Sun* "article" "was fabricated by Chung and that he filed it with the intent to mislead the court," because he "presented [the *Saudi Sun* 'article'] to the court in a form designed to appear as the unbiased journalism of a legitimate, independent news organization, when it actually was prepared by him or at his direction[.]" *Id.* at 9, 20. The Special Master's factual findings thus resolve the issue of "the legitimacy of the article attached at Docket Entry No. 66," the key factual question at issue in this *sua sponte* sanctions proceeding. *See* Dkt. 80 at 1 (order appointing Special Master).

Instead of contesting these facts or demonstrating any remorse for his misconduct, Mr. Chung continues his reprehensible pattern of making outrageous and baseless accusations against members of this Court, Respondents, and their counsel. Mr. Chung does not, and cannot, offer any supporting evidence for his recklessly improper allegations, and they serve only to confirm the bad-faith nature of his conduct in submitting the *Saudi Sun* "article" in the first place.

Mr. Chung's latest submission raises numerous objections to the imposition of sanctions. Those objections lack merit. The Court should adopt the findings and conclusions of the Special Master's report in full, sanction Mr. Chung accordingly, and refer him for disciplinary proceedings with the Washington State and Ninth Circuit bars, as recommended by the Special Master.

## FACTUAL BACKGROUND

This sanctions proceeding arises out of a filing made by Petitioners-Appellants in the course of the Court's consideration of the merits of this appeal. As the Court is aware, Petitioners-Appellants appealed from the district court's order and judgment denying confirmation of a purported arbitral "award." Following the filing of the parties' principal briefs, but before oral argument or a decision on the merits, Respondents filed requests for judicial notice of two criminal judgments entered by Egyptian courts in connection with the criminal scheme underlying the purported arbitral "award." *See* Dkt. 29-2 at 2–3; Dkt. 45-2 at 2–4. Petitioners-

2

Appellants moved to strike both of these requests. Dkt. 46. Some months later, after oral argument, Petitioners-Appellants filed a motion to attach a "supplemental exhibit" in support of their pending motion to strike, in the form of a purported *Saudi Sun* "article." Dkt. 66-1. The article is formatted like a newspaper, with a masthead for *The Saudi Sun*, followed by six stories in triple-column print, with photographs scattered throughout. *See* Dkt. 66-2 at 2–16. Petitioners-Appellants asserted that the exhibit was a "*Saudi Sun* article that explains and provides an informative summary of factual and procedural events related to the 2014 and 2015 arbitration proceedings that took place in Cairo, Egypt and the U.S. confirmation and Enforcement proceedings in the United States." Dkt. 66-1 at 2.

On August 12, 2021, this Court affirmed the district court's denial of the petition to confirm the purported arbitral award. That same day, by separate order, this Court "ordered [Mr. Chung, counsel for Petitioners-Appellants,] to show cause why sanctions should not be imposed for filing the article at Docket Number 66"— the purported *Saudi Sun* article. Dkt. 74 at 3. The panel explained that it had been "unable to locate" the supposed publication and that the "article appears to have been fabricated for purposes of this litigation." *Id.* at 1. This Court referenced its "inherent authority to fashion sanctions for fraud upon the court," as well as its authority to "sanction 'counsel or a party for conduct that violates the Federal Rules of Appellate Procedure, the Circuit Rules, orders or other instructions of the Court,

the rules of professional conduct or responsibility in effect where counsel maintains his or her principal office or as authorized by statute.'" *Id.* at 2–3 (quoting 9th Cir. G.O. 12.9(a) and citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); Fed. R. App. P. 46(c); 9th Cir. R. 46-2(a); Wash. R. Prof'l Conduct 3.3).

Mr. Chung's response to the order to show cause was emblematic of what was to become a series of baseless and harassing filings. Rather than disclose the provenance of the *Saudi Sun* "article" and display contrition, Mr. Chung filed both a 20-page motion to vacate the order to show cause and a "response" containing a cover letter and the same memorandum of law and exhibits as the motion to vacate. Dkts. 78, 79. Mr. Chung also demanded a hearing on sanctions pursuant to Federal Rule of Appellate Procedure 46(c). Dkt. 79 at 1.

On November 15, 2021, this Court appointed Judge A. Wallace Tashima as Special Master to oversee further proceedings on the order to show cause. Dkt. 80. The Court authorized the Special Master "to conduct any proceedings he deems appropriate to determine the legitimacy of the article attached at Docket Entry No. 66, and prepare a written report and recommendation to this panel regarding what, if any, sanctions should be imposed on Mr. Chung for submitting the article to this court." *Id*. Two weeks later, on November 29, 2021, the Court issued the mandate on the affirmance of the district court's order. *See* Dkt. 82.

The Special Master scheduled a Pre-Hearing Conference on March 11, 2022, and invited the parties to submit pre-hearing briefs regarding "the scope and length of the evidentiary portion of the hearing, *i.e.*, whether counsel contemplate calling any witnesses, including expert witnesses, and/or adducing or offering any documentary evidence." Dkt. 83 at 2. The parties submitted Pre-Hearing Conference Statements on March 1, 2022, *see* Dkt. 85, but Mr. Chung failed to identify any particular witness, instead purportedly "reserv[ing] the right to call lay and expert witnesses," Dkt. 86 at 10.

The Special Master held the Pre-Hearing Conference on March 11, 2022, via remote video-conference. At the Pre-Hearing Conference, the Special Master recognized that "it would be helpful, I think, for Mr. Chung to answer certain questions under oath" at the evidentiary hearing, Dkt. 94-3 at 30:22-25, and Mr. Chung represented that he would do so, *id.* at 28:6-10 (SPECIAL MASTER TASHIMA: "So if I were to -- if I were to put you under oath and ask you to answer certain questions about this demonstrative exhibit -- exhibit, you'd be willing to answer them? MR. CHUNG: Yes, Your Honor, of course."); *see also id.* at 24:23-24 ("If the Court asks me anything, I will answer the court freely."). After consulting with all parties regarding their availability, the Special Master scheduled the hearing that Mr. Chung had requested for August 26, 2022, and ordered corresponding briefing deadlines for the parties. Dkt. 88 at 1; *see also* Dkt. 94-3 at 44:4–5. As

discussed at the Pre-Hearing Conference, these briefs were to address "what, if any, sanctions should be imposed on Mr. Chung for submitting the article" and "the legitimacy of that article, that demonstrative exhibit."  Dkt. 94-3 at 31:23–32:2.

An audio recording of the Pre-Hearing Conference was made available to the parties and the public on the same day the conference occurred.  Dkt. 87.  On May 10, 2022, however, Mr. Chung alleged that he was unable to access the publicly available recording.  *See* Dkt. 89 at 2 n.1.  Respondents then filed a request for judicial notice of a certified transcript they obtained of the recording and attached the transcript, Dkt. 94, which Mr. Chung sought to strike.  Dkt. 95.  Mr. Chung also sought to "compel" access to audio and video recordings of the Pre-Hearing Conference in a filing on June 8, 2022, contending that before the hearing formally commenced, the Special Master had made a comment asking what sanction Chevron sought in the proceedings.  *See* Dkt. 96.  On July 15, 2022, the Special Master granted Respondents' request for judicial notice and denied Mr. Chung's motion as "unnecessary."  Dkt. 106 at 2.[1]

---

[1] Mr. Chung filed a similar motion before the U.S. Supreme Court in the course of that Court's consideration of Petitioners-Appellants' unsuccessful petition for a writ of certiorari seeking review of this Court's merits decision in this case.  *See Al-Qarqani v. Chevron Corp.*, No. 21-1153, Pet'rs' Mot. for Resetting June 16, 2022 Conference and Compelling Ninth Circuit Zoom Audio and Video Recordings (U.S.

[Footnote continued on next page]

These vexatious tactics continued in Mr. Chung's pre-hearing brief filed on May 10, 2022.[2] There, Mr. Chung proposed to call seven witnesses at the hearing, without contending that any of them had knowledge of the authorship of the *Saudi Sun* "article": two judges of this Court (Hon. Sidney Thomas and Hon. Eric Miller); three counsel for Respondents in these proceedings; the former ambassador to Egypt, Ahmed Qattan; and current Saudi Minister of State Dr. Issam Bin Saeed. Dkt. 107-2 at 2–5. No valid basis was provided for believing that any of these persons had any personal knowledge relevant to any disputed facts at issue in these proceedings.

Mr. Chung simultaneously filed a motion to stay the Special Master proceedings, which did not even cite the governing standards for motions to stay, *see* Dkt. 89, and which the Clerk summarily denied three days later. Dkt. 91. Mr. Chung also docketed several frivolous motions to strike Respondents' filings, including Respondents' response to Mr. Chung's request for clarification and modification of an order from the Clerk striking his sanctions brief. *E.g.*, Dkt. 98. These filings contained numerous outrageous and baseless allegations against members of the Court and opposing counsel. For example, Mr. Chung falsely referred to Judge Miller as "a corrupt judge" (Dkt. 98 at 16) and raised meritless

---

June 15, 2022). The Supreme Court denied certiorari without comment, and also denied Mr. Chung's subsequent petition for rehearing of the denial of certiorari.

[2] The Clerk of Court originally struck Mr. Chung's opening filing, but the Special Master vacated that clerk order on July 15, 2022. Dkt. 106.

charges of "judicial misconduct" (Dkt. 95-1 at 3), baselessly accused counsel for Respondents of harboring anti-Asian bias (Dkt. 98 at 1 n.1), and characterized the show-cause process as "star-chamber proceedings," "kangaroo court proceedings" (Dkt. 100 at 4), and "'*McCarthyism* hearings'" (Dkt. 98 at 12), all while grossly mischaracterizing the record. Mr. Chung also filed a motion to disqualify the Special Master (Dkt. 109), which the Special Master correctly held did "not make even a colorable showing, much less a *prima facie* showing," of bias or partiality. Dkt. 117 at 1.

Respondents filed their sanctions response brief on August 5, 2022. Dkt. 114. Mr. Chung failed to file a reply brief or seek an extension of the August 19, 2022, deadline to do so. Then, at approximately 9:29 p.m. on the night before the August 26, 2022 evidentiary hearing, which had been scheduled at his request (Dkt. 79), Mr. Chung filed a letter announcing for the first time his intention not to appear at the hearing. Dkt. 121.[3] In this letter, Mr. Chung made no request to adjourn or reschedule the hearing.

---

[3] In the letter, as in the other filings Mr. Chung has made in these proceedings, Mr. Chung again failed to address the legitimacy and authorship of the *Saudi Sun* "article." Instead, he contended that he was ethically prohibited from participating in the hearing because doing so would be "knowingly assist[ing] a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct." Dkt. 121 at 1. In so arguing, Mr. Chung's letter reiterated his numerous baseless

[Footnote continued on next page]

The hearing proceeded on August 26, 2022, as a default hearing given Mr. Chung's failure to appear. The Special Master struck all of Mr. Chung's proposed witnesses because there was no indication that "any of those persons" "could have any information that would enlighten the issue before the special master in this limited proceeding." *See* Dkt. 122 at 6:30–7:25 (audio recording of the August 26, 2022 hearing).[4] The Special Master admitted Respondents' proposed exhibits. Dkt. 123.

The Special Master issued his report on October 28, 2022. Dkt. 124. Mr. Chung filed his Objections on November 18, 2022, purporting to rely on Federal Rule of Civil Procedure 53, Dkt. 125 at 1–2, although that rule is not directly applicable to appellate proceedings, *see* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . .").

---

allegations of bias and misconduct against Judges Eric Miller and A. Wallace Tashima, claims that have already been properly rejected after being raised in Mr. Chung's prior frivolous disqualification motions. *See* Dkt. 56 (denying disqualification of Judge Miller); Dkt. 117 (denying disqualification of Judge Tashima).

[4] Respondents have filed a request that this Court take judicial notice of a transcript of the August 26, 2022 hearing. Dkt. 127. The portion of the argument cited here appears at 7:8-17 of that transcript.

## ARGUMENT

For ease of reference, Respondents address below Mr. Chung's various arguments in the order in which they are presented.

## I.     The Arguments In the Introduction Section of Mr. Chung's Filing Lack Merit

### A.     Mr. Chung's Purported "RPC 8.3 Report on Judicial Misconduct" Is Improper And Meritless

Mr. Chung begins his filing by claiming to be submitting a "Washington State Rule of Professional Conduct ('RPC') 8.3 Report of Judicial Misconduct," which purportedly "ethically addresses a pattern of judicial misconduct and retaliation by certain judges [Eric Miller and A. Wallace Tashima] in the Ninth Circuit who have sanctioned attorneys opposing Chevron's counsel, Gibson Dunn & Crutcher's high-profile clients (*e.g.*, Chevron, Dole, Facebook)." Dkt. 125 at 1, 3. Mr. Chung's filing is procedurally improper and substantively meritless.

There is no basis whatsoever for Mr. Chung's wild accusations of judicial misconduct. Mr. Chung previously raised his numerous baseless allegations of bias and wrongdoing against Judges Eric Miller and A. Wallace Tashima in his respective motions to disqualify both judges. Dkts. 54, 109. Judge Miller correctly rejected Petitioners-Appellants' arguments for recusal, Dkt. 56, and the Supreme Court denied Petitioners-Appellants' petition for certiorari seeking review of that determination, Dkts. 101, 103. Special Master Tashima also correctly rejected Mr.

10

Chung's disqualification arguments as "not mak[ing] even a colorable showing, much less a *prima facie* showing," warranting disqualification. Dkt. 117. Mr. Chung's baseless allegations of wrongdoing against sitting judges of this Court are egregiously improper and devoid of merit, and they provide no defense to the imposition of sanctions.

## B. The Ninth Circuit's Issuance of the Mandate Does Not Preclude Sanctions

Mr. Chung erroneously insinuates (*see* Dkt. 125 at 1-2 & n.1) that the issuance of the mandate precludes the imposition of sanctions by this Court. As an initial matter, Mr. Chung's argument rests on a false premise, because the Court issued the order appointing the Special Master to conduct further sanctions proceedings two weeks before it issued the mandate. *See* Dkts. 80 (November 15, 2021 appointment order), 82 (mandate issued on November 29, 2021). In any event, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). *Cooter & Gell* made clear that "district courts may award costs after an action is dismissed for want of jurisdiction," and that "even years after the entry of a judgment on the merits, a federal court could consider an award of counsel fees." *Id.* (internal quotation marks omitted). Similarly, "sanctions" constitute "collateral issues" that can be resolved after an action concludes. *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*, 545 F.3d 1134, 1145 n.6 (9th Cir. 2008).

In this case, Mr. Chung's misconduct occurred before the mandate issued, meaning the Court has jurisdiction to address it. *Cf. Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir. 1990) (no jurisdiction to sanction counsel for misconduct that occurred after the mandate issued). Accordingly, the Court's issuance of the mandate provides Mr. Chung no immunity for his sanctionable misconduct.

### C. Mr. Chung's Allegations Concerning Special Master Tashima and the Recordings of the March 11, 2022 Pre-Hearing Conference Do Not Demonstrate Bias or Partiality

Mr. Chung contends that prior to the official start of the Pre-Hearing Conference, the Special Master was heard inquiring what sanctions Respondents were seeking, and that the Special Master then somehow improperly denied Mr. Chung's motion to compel access to audio and video recordings of that conference. Dkt. 125 at 2 n.2. From these facts, Mr. Chung infers a supposed conspiracy of *ex parte* contacts between Respondents and the Special Master that purportedly demonstrates the Special Master was biased. *Id.* Mr. Chung's allegations lack any good-faith basis and are completely irrelevant to the issue of sanctions.

As an initial matter, an audio recording of the conference was made available on the public docket on March 11, 2022, and remains available to this day. Dkt. 87. It does not support Mr. Chung's allegations.

Second, Mr. Chung raised these issues in briefing with the Supreme Court, and he specifically requested an order from that Court compelling release of the full audio and video recording.[5]  The Supreme Court nevertheless denied certiorari and rehearing.

But even assuming the Special Master had made the statement Mr. Chung alleges, Mr. Chung's arguments would completely lack merit.  According to Mr. Chung, the Special Matter asked his law clerk "what sanctions Chevron wants imposed against Attorney Chung."  Dkt. 125 at 2 n.4.  Such an inquiry would be entirely appropriate and routine, and Mr. Chung offers no citation for the absurd proposition that it would somehow give rise to an appearance of impropriety.  As the Supreme Court has made clear, only statements that "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible" suffice to satisfy

---

[5] *Al-Qarqani v. Chevron Corp.*, No. 21-1153, Pet'rs' Mot. for Resetting June 16, 2022 Conference and Compelling Ninth Circuit Zoom Audio and Video Recordings (U.S. June 15, 2022); *see also Al-Qarqani v. Chevron Corp.*, No. 21-1153, Reply Br. of Pet'rs to Chevron's Opp'n Br., at 12 (U.S. May 31, 2022) ("Despite numerous requests for the revealing audio and video recording of these hearing [sic], Petitioners' counsel has been denied access;"); *Al-Qarqani v. Chevron Corp.*, No. 21-1153, Pet'rs' Pet. for Rehearing, at 7 (U.S. July 18, 2022) ("[O]n March 11, 2022, there exists video and audio evidence that exposes these star chamber proceedings wherein attorneys are targeted by judges through rule by law as opposed to rule of law.  That being said, when Petitioners' counsel and others witnessed the inadvertent disclosure that corroborates how the underlying circuit court proceedings were a sham, Petitioners were deprived of presenting this evidence to this U.S. Supreme Court.").

that standard. *Liteky v. United States*, 510 U.S. 540, 555 (1994). In contrast, "[a] judge's ordinary efforts at courtroom administration . . . remain immune." *Id*. at 556. The Special Master's alleged request to clarify the nature of the sanctions being sought *in a sanctions proceeding* does not even begin to suggest any bias.

Mr. Chung also appears to contend that the Special Master's denial of Mr. Chung's motion to compel access to the video recordings of the March 11, 2022, pre-hearing conference (Dkt. 106) suggests bias. Mr. Chung is wrong, as "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555.

Finally, Mr. Chung cites no evidence for his outrageous and baseless accusation that the Special Master engaged in *ex parte* contacts with Respondents or their counsel. No such contacts occurred, and there is no evidence to the contrary.

Accordingly, Mr. Chung's allegations concerning the Special Master and the Pre-Hearing Conference or the audio and video recording thereof do nothing to preclude sanctions, and are entirely improper.

## D. Federal Rule of Appellate Procedure 27 Does Not Authorize Mr. Chung's Behavior

Mr. Chung asserts that Federal Rule of Appellate Procedure 27(a)(2)(B)(i) immunizes him from sanctions for his misconduct in submitting the *Saudi Sun* article, because the rule allegedly "allows **any** attorney admitted into the Ninth

Circuit to attach '**any paper.**'" Dkt. 125 at 2 n.4.[6] Mr. Chung's attempt to turn a procedural requirement into a justification for attempting to deceive the Court with a misleading filing is wholly unpersuasive.

Rule 27 simply establishes a requirement that any document "necessary to support a motion must be served and filed with the motion." Fed. R. App. Proc. 27(a)(2)(B)(i). It does not provide an independent basis for a party to inject into the record on appeal documents that lack any legitimate basis for inclusion in the appellate record.

Mr. Chung's interpretation of Rule 27 would effectively eviscerate the well-established principle that the "record on appeal" consists solely of "the original papers and exhibits filed in the district court," "the transcript of proceedings," and the district court docket entries. Fed. R. App. P. 10(a). Mr. Chung cites no authority for that startling result, and Respondents are aware of none. *See Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) ("Save in unusual circumstances, we consider only the district court record on appeal.").

---

[6] Instead of referencing Rule 27(a)(2)(B)(i), Mr. Chung cites "Federal Rule of Appellate Procedure 27-1." Dkt. 125 at 2 n.4. There is no such rule, however, and Ninth Circuit Rule 27-1 deals only with certain procedural requirements for motions, so Respondents assume that Mr. Chung is referring to Rule 27(a)(2)(B)(i), which he has cited in previous briefing on this issue. *See*, *e.g.*, Dkt. 71 at 4.

To be sure, Federal Rule of Evidence 201 permits appellate courts to take judicial notice of documents from outside the appellate record in specified circumstances, but Mr. Chung has made no attempt to show that the purported *Saudi Sun* "article" satisfied the requirements of Rule 201, and any such attempt would obviously be frivolous. Far from stating "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), the unauthenticated and unsourced "article" merely rehashed mischaracterizations of the record and meritless legal arguments from Petitioners-Appellants' filings in this and other courts.

Rule 27 thus provides no justification for attempts by litigants to submit misleading or fraudulent extra-record documents in support of a motion. Mr. Chung's position to the contrary is frivolous on its face, and not surprisingly, he is unable to cite any authority supporting it.

### E. Ninth Circuit Local Rule 39-1.6(a) Does Not Preclude an Award of Respondents' Attorneys' Fees as Compensatory Sanctions

Mr. Chung incorrectly contends that any award of Respondents' fees and costs as a compensatory sanction in this proceeding is precluded by Ninth Circuit Local Rule 39-1.6(a). Dkt. 125 at 4 n.5. That rule, which governs party-initiated requests for attorneys' fees, provides that a *party's* "request for attorneys' fees shall be filed no later than 14 days after the expiration of the period within which a petition for

16

rehearing may be filed." Ninth Circuit Local Rule 39-1.6(a). The rule says nothing about this Court's ability to award *sua sponte* compensatory sanctions on its own volition, and case law is clear that the Court may do so. In *Chambers v. NASCO, Inc.*, the Supreme Court squarely held that "nothing in . . . other sanctioning mechanisms . . . warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." 501 U.S. 32, 50 (1991).

In any event, the Court's order directing Mr. Chung to show cause why sanctions should not be imposed (Dkt. 74) was issued on August 12, 2021, before the "expiration of the period within which a petition for rehearing may be filed." Local Rule 39-1.6(a). Even under Mr. Chung's erroneous reading of the rule, therefore, his timing objection is without merit.

## II. Respondents' Response to Mr. Chung's First Objection

As detailed in Part I.D above, Federal Rule of Appellate Procedure 27 did not authorize Mr. Chung's misconduct, and thus it does not immunize him from the imposition of sanctions. Respondents address below the additional arguments Mr. Chung raises as his first objection. Dkt. 125 at 6-8.

### A. Mr. Chung's Allegations Concerning Special Master Tashima's Actions in Other Cases Are Baseless and Irrelevant

In footnote 6 of his Objections (p. 7), Mr. Chung purports to list examples of Special Master Tashima's supposed misconduct in other cases. None of these

examples demonstrates any "misconduct," however, and none has any relevance to the issues before the Court in this proceeding. In any event, Mr. Chung's characterizations are demonstrably false and misleading.[7]

As to Judge Tashima, Mr. Chung first points to a petition for rehearing filed in which the movant argued:

> Another basis for en banc review exists in that something is amiss in the filing of Appellants' Reply Briefs. Despite the fact that Appellant's Reply Briefs were timely filed and served, this Circuit filed those briefs after the August 31, 2022 ruling was made, e.g., there is no indication that those briefs were even considered!

*WB Music Corp. v. Royce Int'l Broad. Corp.,* No. 21-55264, Appellants' Pet. for Reh'g En Banc (9th Cir. Sept. 14, 2022), Dkt. 84, at 2.

The Ninth Circuit denied the petition with "no judge of the court . . . request[ing] a vote on en banc rehearing," *WB Music Corp., et. al*, No. 21-55264, Order (9th Cir. Oct 11., 2022), Dkt. 85, at 2. Mr. Chung's reliance on this petition is frivolous on its face, since it obviously has no relevance here.

---

[7] Mr. Chung also lists negative allegations about Respondents and their counsel from other litigations, without citing any sources or even attempting to explain what relevance they purportedly have to this case. For example, Mr. Chung relies (Dkt. 125 at 7 n.6) on mischaracterizations of proceedings relating to Steven Donziger, a disbarred attorney and adjudicated racketeer who was found to have engaged in "a parade of corrupt actions . . . including coercion, fraud, and bribery." *Chevron Corp. v. Donziger*, 833 F.3d 74, 126 (2d Cir. 2016).

In any event, there is no evidence of misconduct. The docket for the *WB Music* appeal reflects a reply brief being docketed on the same day as the merits ruling merely because the merits ruling granted a motion to file a combined reply brief that had been pending since its filing several months earlier. *WB Music Corp., et. al,* No. 21-55264 (9th Cir. Aug. 31, 2022), Dkt. 81-1, at 20 n.2.

Mr. Chung next refers to *In re Girardi*, in which Judge Tashima previously served as a Special Master for this Court in an attorney misconduct case. Far from evidencing wrongdoing or misconduct by Judge Tashima, *In re Girardi* demonstrates his capabilities and experience as a Special Master: this Court "adopt[ed] in full Judge Tashima's findings of fact, conclusions of law, and recommendations with respect to sanctions." 611 F.3d 1027, 1034 (9th Cir. 2010).

Accordingly, Mr. Chung's allegations are both unfounded and irrelevant.

## B. Mr. Chung's Allegations Concerning Gibson Dunn's Hiring of Former Law Clerks Are Irrelevant

Mr. Chung also raises allegations of bias stemming from Gibson, Dunn & Crutcher LLP's hiring of attorneys who had previously served as law clerks to Judges Miller and Tashima. Dkt. 125 at 7–8. Mr. Chung "submits no authority indicating that a law firm should refrain from recruiting judicial clerks—indeed, the Canons indicate otherwise—or must tell opposing counsel, its own clients or the court if it offers employment to a law clerk or its offer is accepted." *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler,* 210 F.3d 983, 989 (9th Cir. 2000).

19

And no such authority exists, because "judges (and their law clerks) are presumed to be impartial and to discharge their ethical duties faithfully so as to avoid the appearance of impropriety." *Id.* at 988. Mr. Chung points to nothing to overcome that presumption.

## III. Respondents' Response to Mr. Chung's Second Objection: Mr. Chung's Accusations of Misconduct Are Unfounded and Irrelevant

As detailed in Part I.E above, Mr. Chung errs in contending that Ninth Circuit Local Rule 39-1.6(a) operates to bar an award of sanctions here.

Mr. Chung also alleges, without any supporting citation, that "criminal misconduct related to the tampering of witnesses and Foreign Corrupt Practices in conjunction with SEC violations" occurred in connection with this case. Dkt. 125 at 9. Not only does Mr. Chung provide no competent proof that such conduct even happened, but he also offers no evidence that any such alleged conduct has anything to do with Respondents, this proceeding, or the narrow issues before the Special Master. His wild and unfounded accusations are grossly improper, and have no relevance to this sanctions proceeding beyond confirming the propriety of imposing sanctions on Mr. Chung.

## IV.  Respondents' Response to Mr. Chung's Third Objection

### A.  Federal Rule of Appellate Procedure 38 Does Not Provide the Exclusive Basis For Imposing Sanctions in Federal Appellate Courts

Mr. Chung errs in contending that Federal Rule of Appellate Procedure 38 provides the exclusive basis for sanctions related to appellate proceedings, and therefore precludes the Court from relying on its inherent authority.  Dkt. 125 at 9–10.  Rule 38 is simply the appellate analog of Rule 11 of the Federal Rules of Civil Procedure.  It provides that, "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  Fed. R. App. P. 38.

Contrary to Mr. Chung's contention, the authorities on which he relies do not purport to hold that Rule 38 provides the sole basis for the imposition of sanctions by appellate courts.  Rather, those authorities merely confirm that Rule 38, not Rule 11, governs the imposition of sanctions for filing a frivolous appeal.  *E.g.*, *Cooter & Gell*, 496 U.S. at 407 (holding that Rule 38, rather than Rule 11, governs the issue of fee-shifting for filing a frivolous appeal, because "[t]he Federal Rules of

Appellate Procedure place a natural limit on Rule 11's scope. On appeal, the litigants' conduct is governed by Federal Rule of Appellate Procedure 38 . . . .").

Nothing in Rule 38 addresses the issue of sanctions for misconduct that is distinct from the filing of a frivolous appeal, and it certainly does not purport to preclude a court of appeals from utilizing its inherent authority, other court rules, or any other sources of authority to impose sanctions for other forms of misconduct by counsel during the course of an appellate proceeding. Mr. Chung cites no authority to the contrary.

Indeed, far from providing any support for Mr. Chung's contention that the codification of specific sanctions authority somehow eliminates the inherent authority of courts to sanction misconduct, Supreme Court precedent expressly rejects that notion. In *Chambers*, the Court squarely held that "nothing in . . . other sanctioning mechanisms . . . warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." 501 U.S. at 50. Accordingly, federal courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id*.

## B. Federal Rule of Appellate Procedure 47 Does Not Preclude Sanctions

Mr. Chung also errs in contending that Federal Rule of Appellate Procedure 47(b) somehow precludes sanctions here. Dkt. 125 at 11. Rule 47(b) provides that

"[n]o sanction . . . may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules" absent "actual notice of the requirement." Here, however, the imposition of sanctions on Mr. Chung is justified by his violation of the requirements of federal law and rules, including the long-established prohibition against fraud on the court and the various requirements listed in Ninth Circuit General Order 12.9(a), as specified in this Court's initial order to show cause. Dkt. 74 at 2–3. Rule 47(b) therefore has no application here.

### C. The Imposition of Inherent Authority Sanctions Would Not Violate Mr. Chung's Due Process Rights

Mr. Chung makes baseless assertions that the imposition of sanctions pursuant to the Court's inherent authority would deny him due process. Dkt. 125 at 17–18. Compensatory monetary sanctions "need only be preceded by notice and an opportunity to be heard." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1112 (9th Cir. 2005). As detailed *infra* Part VII, Mr. Chung has received ample due process in these sanctions proceedings, including notice of the potential grounds for imposition of sanctions as set forth in the order to show cause (Dkt. 74), the ability to submit briefing on the allegations of misconduct and related sanctions issues (Dkts. 83, 86, 88, 106, 107), and the opportunity (which he declined) to participate in a full evidentiary hearing (Dkts. 88, 122). There is no due process bar to sanctioning Mr. Chung pursuant to the Court's inherent authority.

**V.**  **Respondents' Response to Mr. Chung's Fourth Objection:  The Special Master Did Not Recommend Disciplinary Sanctions, Only a Referral for Further Disciplinary Proceedings**

Mr. Chung misreads the Special Master's report in claiming that the Special Master recommended disciplinary sanctions. Dkt. 125 at 12–13.  The Special Master merely recommended that the panel refer the matter to "the Washington State Bar for possible disciplinary ***proceedings***" as well as "to the Appellate Commissioner pursuant to Ninth Circuit Rule 46-2(f) for the conduct of disciplinary ***proceedings***." Dkt. 124 at 24–25 (emphases added).   Those recommendations are entirely consistent with the Special Master's statements at the March 11, 2022, pre-hearing conference that "since there was not a specific referral to make any recommendation about imposing discipline, I don't -- I don't view it as within the province of the Special Master to make any recommendation about discipline."  Dkt. 94-3 at 4:19–23.  Indeed, the Ninth Circuit has previously endorsed additional and subsequent attorney discipline proceedings stemming from an initial Special Master sanctions proceeding.  *See In re Girardi*, 611 F.3d at 1034 (Special Master Tashima filed a sanctions report and recommendation which the Ninth Circuit later cited in a follow-on attorney discipline proceeding).  Mr. Chung's objection is without merit.

## VI. Respondents' Response to Mr. Chung's Fifth Objection

### A. *Hazel-Atlass Glass Co.* Applies to Attempted Fraud on the Court Even If the Fraud Does Not Succeed

Mr. Chung's attempt to distinguish *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244–50 (1944), on the basis that it "only is applicable if the party that purportedly defrauded the court prevailed" (Dkt 125 at 13) is wholly unpersuasive. As the Special Master's report correctly observed, "[t]he vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court." Dkt. 124 at 22 (citing *Franco v. Dow Chem. Co. (In re Girardi)*, 611 F.3d at 1037). Mr. Chung cites no authority for the absurd proposition that this Court may sanction attempted fraud on the court only when the fraud succeeds in deceiving a judicial panel.

### B. The Special Master Applied the Correct Legal Standard and Found that Mr. Chung Engaged in Bad Faith

Mr. Chung is flatly incorrect in contending that the Special Master "did not even 'mention bad faith or cite the bad-faith standard'" required for the imposition of sanctions or "make any 'specific finding' of bad faith." Dkt. 125 at 14 (citations omitted). In reality, the Special Master stated the correct standard ("a sanction may be awarded . . . when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") and properly concluded that Mr. Chung's conduct violated it: "Chung's 'entire course of conduct' in preparing and filing the *Saudi Sun* exhibit

25

'evidenced bad faith and an attempt to perpetrate a fraud on the court.'" Dkt. 124 at 23 (internal quotation omitted). The Special Master's Report is plainly correct both in stating and applying the relevant standard and in identifying ample evidence to support a bad faith finding, especially because "[a]ctions constituting a fraud upon the court . . . are also sufficient to support a bad faith finding" for inherent authority sanctions. *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1244 (9th Cir. 2016), *rev'd on other grounds*, 581 U.S. 101 (2017).

Mr. Chung also erroneously contends that only repeated violations of court directives can justify sanctions. Mr. Chung cites no authority for that breathtaking proposition. The fact that repeated misconduct occurred in all of the out-of-circuit (and mostly unpublished) authority he cites says nothing about whether such wrongdoing is a prerequisite for sanctions pursuant to the Ninth Circuit's inherent authority here.[8]

---

[8] Mr. Chung's submission suggests that disclosure of the author(s) of the *Saudi Sun* "article" would violate the attorney-client privilege or work-product doctrine. Dkt. 125 at 15-16 ("[T]he Shoe [sic] Cause Order never asks nor did the Court inquire on who wrote the illustrative exhibit. Despite this being protected by Work Product and attorney client privilege, this issue is moot as the Court ruled it was moot and was never considered and the motion denied."). Mr. Chung offers no support for his assertion that the identity of the author or authors of the *Saudi Sun* "article" is privileged. To the contrary, even when the contents of a document are privileged, it is commonplace for the author(s) to be disclosed on a privilege log. *See Botell v. United States*, No. CIV S-11-1545 GEB GGH, 2012 WL 4208173, at *2 (E.D. Cal.

[Footnote continued on next page]

### C. There Is No Basis for Mr. Chung to Object to Respondents' Role in the Sanctions Proceedings

Mr. Chung also complains that the Special Master purportedly "appoint[ed]" Respondents' counsel to "represent the Court" in the sanctions proceedings. Dkt. 125 at 16. Not surprisingly, however, Mr. Chung cites nothing in the record to substantiate this claim. In fact, the Special Master did nothing of the kind. Instead, he simply provided Respondents an opportunity to participate in the sanctions proceedings, which was entirely appropriate given their status as parties to the case and victims of Mr. Chung's misconduct. Mr. Chung does not, and cannot, cite to any authority for the proposition that it was somehow error for Respondents to participate in these proceedings. And of course, Mr. Chung forfeited any right to challenge the conduct of the August 26 hearing by refusing, without any valid justification, to attend the hearing.[9]

---

Sept. 19, 2012) ("Privilege logs should contain . . . the identity and position of [a document's] author[.]). Here, Mr. Chung has not taken any of the requisite steps to establish that the *Saudi Sun* "article" is privileged, let alone that the author's or authors' identity is somehow entitled to privileged status.

[9] In his letter filed at 9:29 p.m. the night before the August 26, 2022 sanctions hearing announcing that he would not be attending, Mr. Chung contended that he was ethically prohibited from participating by Washington Rule of Professional Conduct 8.4(f). Dkt. 121 at 1. That rule prohibits a lawyer from "knowingly assist[ing] a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." Wash. R. Prof'l. Conduct 8.4(f). Mr. Chung's contention is frivolous, as he cites no authority for the proposing that participating

[Footnote continued on next page]

**D.    The Court May Award Respondents the Entirety of the Attorneys' Fees They Incurred in Participating in These Sanctions Proceedings**

Mr. Chung erroneously contends that the "only attorneys' fees, if any, awardable [are those for] Chevron's Response to the Motion to Attach a Supplemental Exhibit." Dkt. 125 at 16.  In *Goodyear Tire & Rubber Co. v. Haeger*, the Supreme Court held that, in awarding fees for sanctionable misconduct pursuant to their inherent authority, federal courts may award the full amount of the fees that the innocent party would not have been incurred but for the challenged conduct.  581 U.S. at 104 (awards may include "the fees the innocent party incurred solely because of the misconduct—or put another way, . . . the fees that party would not have incurred but for the bad faith.").  The Court further noted that "[i]n exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 110.

---

in a fact-finding hearing as a witness could somehow aid a judge in violating a rule of any kind.  Equally meritless is Mr. Chung's citation in that same letter to Comment 4 to Rule 8.4 (erroneously cited as Comment 6) stating that, "[a] lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists." *Id* cmmt. 2.  The Comment does not provide Mr. Chung with any independent basis for his actions: the Scope provision of the Washington Rules of Professional Conduct clearly states that "Comments do not add obligations to the Rules" and "Comments are intended as guides to interpretation, but the text of each Rule is authoritative." Wash. R. Prof'l Conduct, Preamble ¶¶ 14, 21.  In any event, Mr. Chung could not have had a good faith belief that he was not obligated to participate in an evidentiary hearing that had been scheduled at his request, Dkt. 79, and that he had agreed he would attend, Dkt. 94-3 at 42:5–44:11.

Here, Mr. Chung's sanctionable misconduct in docketing the *Saudi Sun* "article," continually refusing to admit to his role in preparing it, submitting numerous vexatious filings in an attempt to evade liability, and insisting on an evidentiary hearing that he then refused to attend, are the "but for" causes of all of Respondents' attorneys' fees incurred in this sanctions proceeding. As a result, Respondents may recover all such fees as compensatory sanctions. *See In re Bavelis*, 743 F. App'x 670, 677 (6th Cir. 2018) (affirming fee award of "costs and fees" associated with the sanctions proceeding because the sanctioned party, like Mr. Chung here, had "fought at every turn not to be sanctioned" and the fees incurred "fighting this unnecessary battle would not have been incurred but for the . . . misconduct").

Mr. Chung points to *Divane v. Krull Elec. Co.*, 200 F.3d 1020 (7th Cir. 1999), *see* Dkt. 125 at 16, but that case merely stands for the unremarkable proposition that a sanctions award cannot include "attorneys' fees that do not result directly from [the] sanctionable conduct." *Id*. at 1030. The Special Master's recommended sanction is entirely consistent with that proposition: "I recommend that Chung be sanctioned by being required to reimburse Appellees for the attorneys' fees and costs (or such portion thereof as the panel deems just and proper) incurred by Appellees in addressing Chung's filing of the *Saudi Sun* exhibit in Docket No. 66 and its aftermath." Dkt. 124 at 24. Accordingly, it is entirely appropriate to require Mr.

Chung to reimburse Respondents for the fees they incurred in litigating this sanctions proceeding, which was made necessary by Mr. Chung's misconduct and intransigence.

## VII.    Respondents' Response to Mr. Chung's Sixth Objection

### A.    Mr. Chung Received Due Process in the Special Master Proceeding.

Mr. Chung has no good faith basis to assert that the sanctions proceeding denied him due process.  As addressed in Part I.C above, there is no basis to infer partiality from the Special Master's alleged comments at the March 11, 2022, Pre-Hearing Conference.  As for Mr. Chung's claim that he was given "no allowance for written submissions and no time for adequate preparation" for the August 26, 2022, sanctions hearing, Dkt. 125 at 17, the record conclusively refutes those mischaracterizations.  In reality, the Special Master specifically authorized (and Mr. Chung actually filed) a brief on the merits of the sanctions issues.  *See* Dkts. 88, 107. The Special Master further allowed Chung the opportunity to file a reply to Respondents' sanctions brief, *see* Dkts. 88, 106, but Mr. Chung chose not to do so. And Mr. Chung never sought any extensions or continuances of the briefing schedule or the August 26 hearing, which he had specifically requested and agreed to and had been scheduled well in advance by agreement of the parties.  Dkt. 88; Dkt. 94-3 at 42:5–44:11.

Mr. Chung's unjustified last-minute refusal to attend the hearing waived any due process objections as to its conduct, as the Ninth Circuit has held in numerous contexts. *See, e.g.*, *Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) ("[A] person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing."); *In re Livdahl*, No. 2:16-bk-12768-MCW, 2019 WL 1615282, at *7 (B.A.P. 9th Cir. Apr. 15, 2019) ("Mr. Roberts's decision not to attend the hearing is fatal to his due process argument."). And even if Mr. Chung had attempted to preserve any due process objections to that hearing, he offers nothing more than conjecture and improper slander of the Special Master to suggest his claim. *See* Dkt. 117 at 1 (denying recusal motion that did "not make even a colorable showing" of bias). Mr. Chung's objections are meritless.

### B. Mr. Chung's Vagueness Argument Fails

Mr. Chung also errs in contending that he lacked notice of what rules he violated. Dkt. 125 at 18. In its order to show cause initiating these sanctions proceedings, this Court provided Mr. Chung with express notice of the potentially sanctionable conduct at issue and of the sources of potentially applicable authority for sanctioning his misconduct. Dkt. 74 at 1–3. The order explained that Mr. Chung had "filed a motion asking us to consider a news article from a publication we are unable to locate," and that "[b]ecause the article appears to have been fabricated for purposes of this litigation, we order counsel for appellants to show cause why

sanctions should not be imposed." *Id*. at 1. The order further explained that "[t]he article appellants sought to append to their opposition brief is highly suspicious," in that it "purports to originate from a publication called *The Saudi Sun*" but "is undated and lists no author and no address, website, or contact information for the publisher," and "contains language that appears verbatim in appellants' brief opposing the request for judicial notice." *Id*. at 2.

The order then reminded Mr. Chung that the Court has "inherent authority to fashion sanctions for fraud upon the court," as well as to "sanction 'counsel or a party for conduct that violates the Federal Rules of Appellate Procedure, the Circuit Rules, orders or other instructions of the Court, the rules of professional conduct or responsibility in effect where counsel maintains his or her principal office or as authorized by statute.'" *Id*. at 2–3 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), and quoting 9th Cir. G.O. 12.9(a)). The Court further cited Rule 46(c) of the Federal Rules of Appellate Procedure, Ninth Circuit Rule 46-2(a), and Rule 3.3 of the Washington Rules of Professional Conduct. *Id*. at 3.

The order to show cause thus provided Mr. Chung with clear and explicit notice of the potential grounds for imposition of sanctions. The Special Master's report is based on precisely those grounds, and explains in considerable detail why the conduct identified in the order to show cause does in fact merit the imposition of sanctions under the legal principles cited in the order. Dkt. 124 at 8–23. Indeed,

Mr. Chung raises no objections to the Special Master's factual conclusions "that *The Saudi Sun* exhibit was prepared by Chung or at his direction, that it is false and misleading, and that he filed it via CM/ECF with the intent that it be relied on by the panel." Dkt. 124 at 24. This conduct is plainly sanctionable as attempted fraud on the court. *See Hazel-Atlas Glass*, 322 U.S. at 244–50. Mr. Chung's assertion that the allegations against him were unduly vague is completely meritless.

## CONCLUSION

For all of the foregoing reasons, Respondents respectfully submit that the Court should overrule Mr. Chung's objections and adopt the Special Master's report in full.

Dated: December 16, 2022

Respectfully submitted,

*/s/ Thomas G. Hungar*

| | |
|---|---|
| CHARLES J. STEVENS | THOMAS G. HUNGAR |
| STEPHEN HENRICK | GIBSON, DUNN & CRUTCHER LLP |
| GIBSON, DUNN & CRUTCHER LLP | 1050 Connecticut Avenue, N.W. |
| 555 Mission Street, Suite 3000 | Washington, DC 20036-5306 |
| San Francisco, CA 94105-0921 | Telephone: 202.955.8500 |
| Telephone: 415.393.8200 | Facsimile: 202.467.0539 |
| Facsimile: 415.393.8306 | |
| | |
| CHRISTIAN LEATHLEY | ANNE CHAMPION |
| SCOTT BALBER | AKIVA SHAPIRO |
| HERBERT SMITH FREEHILLS NEW YORK LLP | GIBSON, DUNN & CRUTCHER LLP |
| 450 Lexington Avenue, 14th Floor | 200 Park Avenue |
| New York, NY 10017 | New York, NY 10166 |
| Telephone: 917.542.7600 | Telephone: 212.351.4000 |
| Facsimile: 917.542.7601 | Facsimile: 212.351.5219 |

*Attorneys for Chevron Corporation and Chevron U.S.A. Inc.*

33

## CERTIFICATE OF COMPLIANCE

I certify that this response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced 14-point, Times New Roman font using Microsoft Word 2016.

Dated: December 16, 2022          */s/ Thomas G. Hungar*
                                      Thomas G. Hungar